Next case, United States v. Davis. Ms. Sobel. May it please the court. Carlton Davis was sentenced to 10 months of incarceration after admitting a violation of a supervised release, specifically for possessing two dogs. At the revocation hearing, the district court made two errors in imposing sentence, which I'd like to focus on today, each of which independently required that that sentence be vacated and that Mr. Davis' matter be remanded to the district court. First, the district court based its sentence in part on its conclusion that Mr. Davis had an addiction to dogfighting, despite there being no evidence in the record to support that belief. And the district court went on to conclude that his addiction... Can you speak a little more slowly? Yes, Your Honor, that his addiction to dogfighting would make him likely to recividate... I apologize, to reoffend if he did not receive counseling. Second, the district court based its sentence in part on the infamous Michael Vicks case, whereby a very famous NFL player possessed dogs during the course of a multi-ring, multi-state felony conspiracy charge. Importantly, the district court gave no notice at all to the parties of its reliance on that case or of its intention to rely on that case. Well, as it comes to dogfighting, what else do you... I read a headline somewhere else that somebody's pit bull, he was getting an interview and the pit bull killed him. I don't know anything about dogfighting, but that got a lot of publicity, so I guess sort of referencing it isn't really out of line if you don't know anything else. Well, Your Honor, specifically in this case what the district court did was repeatedly reference the Michael Vicks case. You've got to speak more slowly. Yes, Your Honor. The district court here repeatedly referenced the Michael Vicks case and specifically the sentence that Mr. Vicks received. The district court noted that it had thoroughly reviewed the filings in the sentence in that matter. Defense counsel, although presumably aware of the case in the general public sense of the word, was not prepared to address the ways in which Michael Vicks' prosecution differed from Mr. Davis' supervised released violation. And with regard to that argument, I think the district court prosecution in United States v. Berry and this court's decision in United States v. Cortland are particularly significant there. Like here, the district court was considering a dogfighting case. How do you refer to the Michael Vicks case as infamous? I apologize, Your Honor. Why do you call the Michael Vicks case infamous? Your Honor, I believe the district court used the word infamous, but because it was so- Well, you used the word infamous. I did also use it. It's in your brief, so- Because the case did garner much attention in the popular press, and so it was part of the sort of public- Well, what was infamous about it? I think primarily, Your Honor, because Michael Vicks was a very well-known NFL player whose career, and I apologize, I'm not a football fan particularly- Well, do you think he was improperly punished? No, Your Honor. Then why is the case infamous? Your Honor, I think the case garnered much national attention because of his profile as a sports figure. The error here was the district court comparing that case to this case without giving defense counsel an opportunity- I don't understand your notice argument. The district judge is no longer required even to give notice that he's considering a non-guideline sentence, right? That's true, Your Honor. And we're not talking about factual material. It's not unusual for sentencing judges to try to connect with a defendant or with an audience by referring to some higher-profile cases. In a Ponzi scheme, you might want to refer to the Madoff case. Insider trading, talk about Ivan Boesky or Michael Milken to go back 30 years. Is that error, not to let the defense know you're going to draw those comparisons? The district judge, he said you can't lay them over one another. He obviously didn't treat them as congruent, so I don't understand the notice problem. Your Honor, I think when a district court specifically relies on a sentence in a particular case and draws conclusions about the appropriateness of a sentence in the case before it, that there are factual determinations that are being made. And I think in those cases the district court is obligated to give notice under the due process clause. To give notice- Has any other court interpreted the due process clause quite that aggressively with respect to sentencing explanations? Well, Your Honor, in this court, United States v. Morales, this court noted that when the district court considers facts outside of the record, and I believe in this case the district court's consideration of the Vicks case was a consideration of facts outside of the record. What were the facts outside of the record in Morales? I don't remember that. Your Honor, in that case the court held that the parties did in fact have notice of the facts. And so it was in some sense, I guess, dicta. But there I believe the district court was considering transcripts, sentencing or trial transcripts in a related case, and the parties knew about that. That sounds quite a bit different. Well, what this court did was emphasize the extent to which if the district court was going to draw comparisons or rely on facts, that it had to let the parties know that so that the parties would be prepared to counter those arguments. In United States v. Berry, the district court, in a subject matter related to this case, there the district court was conducting a sentencing for a dogfighting case, not a supervised release hearing, but an actual dogfighting case. The district court prepared a memorandum and an opinion that was quite lengthy, outlining the history of dogfighting, other related dogfighting cases, and I believe including the Michael Fix case, in order to give notice to the parties of the things that it was considering in crafting its argument. Now certainly the district court was under no obligation to outline its reasoning or the possibility that it was going to go outside of the guidelines. But the facts that the district court was considering, the facts of other cases, the comparison to specific other cases, and to the extent that it was relying on the history of dogfighting itself, it was appropriate in that case for the district court to give notice to the parties so that they could appropriately prepare arguments to counter the district court's conclusion. It sounds like you're arguing there's a due process right to rebut the explanation the judge offers for the sentence. Not to rebut the explanation, but I do believe there's a due process right to be informed of the facts upon which the district court intends to rely. And here, the district court did not say, I did a survey of related dogfighting cases, or in my experience dogfighting cases are egregious. What the district court said was I specifically went back and carefully reviewed this specific case. Had counsel known that the district court intended to do that, Had known what? Had counsel known that the district court intended to rely and review the Michael Vicks prosecution specifically, counsel would have been prepared to highlight the ways in which this supervised release violation for mere possessing of two dogs was different from that prosecution. Specifically, the trial attorney, the defense counsel in this case, would have been able to point out that the Michael Vicks case involved multi-year, multi-state conspiracies. The defense attorney would have been able to point out to the district court that Michael Vicks had personally strangled or drowned at least six to eight dogs. That Mr. Vicks had been crucial in that case in the promotion and facilitation of numerous instances of gambling rings. The defense attorney would have been able to go to greater lengths to describe that. Now, the government says the record is replete with evidence that Davis has an unhealthy fixation with and devotion to dogfighting. Disagree with that? Your Honor, there is no question that Mr. Davis has two... Do you disagree with what I said? Yes, Your Honor. All right. Why do you disagree? You don't think it's unhealthy? You think dogfighting is fine, even though it's illegal? Your Honor, I think in a world where we have a complicated relationship with animals, I'm not here to pass judgment on... A complicated relationship with animals? I'm not here to pass judgment on the appropriateness... What is it? ...or not... What are you talking about? It is criminal, correct? It's absolutely criminal. No question. And the condition was not vague in this case for supervised release? No. Apparently, he's been doing this since 2002. He has one conviction for dogfighting and a conviction for attending a dogfighting venture, an animal-related venture, which was a misdemeanor out of Ohio. That's what he's on supervised release for. Before I go any further, I'd like to take a brief moment to address this... What do you think would be an appropriate sentence? Trial counsel in this case asked for probation. I understand the district... Probation? Yeah, or an extension of Mr. Davis's supervised release. I apologize for the misstatement. What's the timing pressure in this case? Is he in custody at this point? He is in custody, Your Honor. He went into custody on January 11th, so he served just over two months of his sentence. Very briefly, I believe my time is almost up. I wanted to take a moment to address the standard of review in this case. The district court's findings of facts are reviewed for abuse of discretion. The government argues that because Mr. Davis's counsel didn't object, that plain error review applies. However, if the court reads the transcripts carefully, the district court made its conclusion about imposing sentence on page 17 of the transcript of the initial hearing before it made any of its other factual findings, before it described its belief that Mr. Davis had a mental illness, before it went on to rely on the Michael Vicks case. And when that happens, this court has repeatedly held that defense counsel is under no obligation to object because the thing has already occurred. In Bradley, which is also relevant because it talks about the way the district court can't just assume that a defendant is likely to reoffend based on the nature of their offenses without any other evidence in the record, this court noted that a defendant need not complain about a judicial choice after it has been made. So this wasn't an instance where the district court said, I'm going to make these findings, I'm going to rely on this case, and here is my sentence. Rather, what the district court did was make its sentence and then go on to sort of discuss its findings. And for that reason, defense counsel was under no obligation to make an objection. United States v. England and Bartlett also reached the same conclusion about waiver, which is not applicable in this case. I thought the judge had invited objections. Did I miss it? Your Honor, the colloquy is sort of long and rambling. It circles back upon itself. He does invite counsel to make objections at various points throughout the hearing, and the same at the Rule 35 motions hearing. However, he reiterates, he makes his ruling at the beginning and then reiterates its ruling. And at that point, defense counsel was alleviated of any obligation to make an objection. However, even if plain error were to apply, I believe Mr. Davis meets that standard. Here, the error, both sets of error are plain. This Court has repeatedly held that district courts cannot make findings that aren't supported in the record. Here, the district court's conclusion that Mr. Davis had an addiction to dogfighting is simply baseless. No, I don't think it is baseless. You're understanding that. He's been doing this for many years. Your Honor, he … So what do you want to call it? You don't want to call it an addiction, just a taste, a preference, an enjoyment? I think enjoyment is a very different word with a very different meaning. Really? You think so? Enjoying and torturing animals? That's innocent? I didn't say it was innocent, but I do not believe it's an addiction. I believe there's a difference. But you don't what? I don't believe it's an addiction. There is a difference between the words. What difference does it make? Your Honor, an addiction. That's ridiculous. An addiction. It's worse to be having these dogs kill each other because you enjoy it rather than because you have some mental disturbance. Whether it's better. Mental disturbance, you know, it's treatable and you can be sympathetic to someone who's acting out of insanity, but someone does it for the enjoyment? Whether it's better or worse. Really? Addiction connotes a medical situation. You're treating the district judge's choice of language as a medical diagnosis? Well, Your Honor, the district court goes on in the Rule 35 motion to emphasize the extent to which it did, in fact, mean this in a non-colloquial sense of the word. I'll use the phrase non-colloquial. At some point, defense counsel argued to the district court judge that no one had raised Mr. Davis' psychological well-being, that there had been no suggestion that he had any mental health problems whatsoever. And the district court. I know, it's so funny. You're thinking that if he has no mental health problems, it's fine. Your Honor, I'm not suggesting that it's fine. It's worse. What I'm saying is that. Right? What I'm saying is. It's worse if he does this without having any mental problems. I don't know. Right? Because if he does this without mental problems, he does this because he enjoys seeing the dogs kill each other. I wouldn't suggest that it's better or worse. Well, you should say it's obviously worse to do these things for enjoyment than to do these things because you can't help it because you have mental illness. The reason why it matters. You can't see that distinction? I understand the court's distinction. No, I don't think you do. I do. I don't agree with the import in this case because the district court concluded that Mr. Davis had an addiction and that without treatment, he would re-offend. And that ties us right back into England and Bradley and Miller, which are cases in which the district court made conclusions about the. Of course he'll re-offend. What's to keep him from doing so? He's been doing it for many years. Why should he stop? Well, Your Honor, I don't believe. With probation, you think that would stop him? I don't believe the record supports that conclusion. Oh, come on. Why do you think probation would do anything? Your Honor, I was not trial counsel. And so the relationship between Mr. Davis and his supervised release officer was not something I was privy to. And so I, you know, can't opine as to why the probation officer made the recommendations that it made. Okay. Well, thank you very much, Ms. Sobel. Thank you, Your Honor. Mr. Holler? Thank you, Your Honor. Thank you. Good afternoon, Your Honors, and may it please the court. The district court committed no errors in sentencing Davis. It did not plainly rely on any erroneous facts or give insufficient notice. It kept an open mind throughout the proceedings, and its 10-month sentence should stand. With all due respect to my opponent, I do believe that there is some over-reading of the transcript that's going on here. The district court was not using, I don't think you can read this transcript and think that the district court was attempting to medically diagnose Mr. Davis in any way, shape, or form. The district court says several times that the defendant has a problem. Those are his words mostly. He has a problem with dog fighting.  He's fought dogs or attended dog fighting ventures or been around abused animals and done nothing about it multiple times. He has a problem. Whatever the source of that is, we can get a medical doctor to diagnose that. We did. And as you pointed out, Judge Posner, I don't think anything that the medical diagnosis said helps the defendant. What he says is he's narcissistic, he's sensation-seeking, he has impulse control problems. So when the district court's sitting there saying, you know, maybe counseling will help, maybe there's some kind of mental issue going on, no, no, he's just a narcissist. So that's unhelpful. There's no reason to think, even if the court thought this was error, which it is not, that this is the kind of plain error that it would be helpful to go back and renew. On the Michael Vick issue, Your Honor, I think my opponent went to the Morales case, and since you asked Judge Hamilton, the Morales case is a case where the defendant was given an organizer and leader enhancement under mandatory guidelines in the 1990s. And the district court judge said, I'm not going to base this organizer and leader enhancement on anything here. I'm going to base it on the trial that I was at of a different defendant that this defendant, I believe, wasn't at because he was in a different trial or pled or something like that. So it wasn't really in the record in his case. And what this court said was, you know, first of all, if the district court is going to rely on those kinds of things, you know, they probably should give notice in the mandatory guidelines era. But any argument of, this is a quote, any argument of unfair surprise is forfeited by Morales's failure to have raised that argument in the district court. As soon as the judge said he was going to rely on part of the evidence at trial, Morales's counsel should have objected or asked for a continuance. So even if we thought that that rule still carried over out of the guideline enhancement context, out of the mandatory guidelines context, the answer of what's supposed to happen is if trial counsel really didn't know who Michael Vick was or really thought that there was something important about the Michael Vick case that needed to be discussed, to stand up and object or to ask for a continuance or to do any of the things. That did not happen here. Now the court did, the court ends up discussing Michael Vick sort of later on in the proceedings after it's already announced the sentence and after it's already given some give and take. But the idea that, you know, the trial counsel in this case could not have stood up and said, judge, I don't know who Michael Vick is. Judge, I think that you shouldn't be talking about Michael Vick in this case. I object. I mean, defense counsel was given three opportunities after that to comment on the sentence. And the first time she doesn't say, I don't know who Michael Vick is. She says, judge, I just want you to understand, you know, the defendant didn't just get rid of the dog here. He got rid of the seven dog houses in his backyard. He got rid of all the dog food in his backyard. He got rid of all the dog chains in his backyard. I'm not sure why he had all those things to begin with. But that was where she went. And then later, she was given a second chance. And she said, by the way, he's going to lose his CDL. So she didn't say, I don't know who Michael Vick is. I can't believe we're talking about Michael Vick. So for her to come back after the sentencing and say, now I want to point out these differences. I mean, the district court, when the district court talks about Michael Vick, what the district court is saying is, essentially, you know, and he says, as you pointed out, Judge Hamilton, you can never lay cases on top of each other. But there was a football player a few years back who had a very promising career, but made some of the same arguments in this court, and he went to jail for a considerable period of time. The reason being, this isn't a non-victim crime. And then this is on page 21 of the appendix. And then he goes on for 10, 11 lines talking about, the reason I'm talking about the Vick case is because dogfighting is not a victimless crime. So it is a Bernie Madoff comparison or a Michael Milken comparison. It is a, this is why this crime is important. We don't get a lot of dogfighting cases in federal court, but it still is an important case. And this level of cruelty to animals is something that needs to be punished. And here, for all the reasons I think the court itself has already expressed, the defendant's request that he be given an additional six months of supervised release, flatly, Your Honors, I think just was kind of a joke. The 10 months here, is that going to be followed by any supervised release? It is not, Your Honor. It's basically wash hands. Yes, it was wash hands. This was a misdemeanor, so the total amount that could be served was only 12 months anyway. So I don't think the court felt there was any reason to put a 60-day term of supervised release on the end of this, which is all that would have been allowed. And so, yes, he did start the term. I did look at VOP. He does get out, I believe, November 9th, somewhere in that range. The case would move out at that point if the case was still pending. But that is the time frame. Thank you. If the court has no further questions, I would ask that you affirm. Okay, thank you, Mr. Holler. Thank you. So, Ms. Sobel, would you like another minute? Yes, Your Honor. Your Honors, specifically with the comparison to the Michael Vick case, the district court did suggest some general comparisons. But he went on to say, and this is on page 19 of the transcript, again, I go back to the Vick case. I went back and looked at that actually before I came in here. Some of the factors overlay themselves. In that case, Mr. Vick had gotten a considerably longer sentence than what the supervised release sentence is. So there the district court is specifically comparing the sentence that Michael Vick got to the one that it had already imposed on Mr. Davis some minutes prior during the course of the hearing. Without telling the counsel that the court intended to rely on the facts of that case and the sentence in that case, counsel was simply unprepared to say, Your Honor, this is why Michael Vick received this sentence and why that sentence is inappropriate here. We do not believe that plain error applies. Well, he didn't give him a comparable sentence, did he? He did not give him a comparable sentence to the five-year sentence that Michael Vick received. Pardon? No, he wouldn't statutorily have been able to give him a comparable sentence. So what's the harm of referring to Vick's case? Your Honor, during the Rule 35 hearing, the district court said over and over again that some of the factors that we raise, specifically its conclusion about Mr. Davis' mental health and its comparison to the Michael Vick case, influenced the sentence that it had imposed, that those were factors that were relevant. You just have this confusion about mental health. You seem to think that if he has a psychiatric problem, that that would make him more culpable, whereas obviously it would make him less culpable. Well, Your Honor, there's an argument that it would make him less culpable, but there's also an argument that No, there isn't. Obviously, nuts are not as responsible as sane people. Unless the court They may have to be put away or what have you, but they are not as culpable. But they are more likely to re-offend. Pardon? But they are more likely to re-offend because there's an underlying problem. Impulsion. More than impulsion. Illness. And that's what the district court was saying, was that Mr. Davis had an underlying illness that needed medical intervention. And that is the conclusion that is just unsupported by the record. And the district court, during the Rule 35 hearing, emphasized that that's But when someone, I mean, it's ridiculous. So are you saying that someone who murders for gain, say, perfectly sane, just his way of earning money, has to be given a lighter sentence than someone who's insane? No, not at all, Your Honor. No, that's what you're saying. What I'm saying is that there's a You're saying that when a person commits crimes because of insanity, he has to be punished more heavily. That's what you just said. What I'm saying is that the district court erred in making a conclusion about this defendant's mental health with no evidence in the record and made conclusions about this defendant's likelihood of re-offending based on that. Yes, but if he isn't mentally ill, then he's really a monster. You don't understand that. I do understand that. No, you don't. I think there's a tension in No, you're confused. You don't understand that there's a difference between people who commit crimes who are perfectly sane and people who commit the same crimes who are mentally ill. I do understand that difference, Your Honor. And I will say from my own experience, courts treat those people differently, but not in a consistent way. Some courts see defendants who are mentally ill as more of a problem, deserving more of a punishment because they don't believe that they will be rehabilitated. And so there's a specific and general deterrence argument that gets invoked to put people with mental illness in prison for longer because the theory is nothing that we do will help, so let's just generally detain that person. On the flip side, one could see someone without a mental illness is more culpable because they're more in charge of their actions. I'm saying there's arguments in either direction. So giving him probation is going to make it less likely for him to go back to dogfighting? Your Honor, giving him... Is that your idea? My argument is that the district court erred in reaching conclusions that were not supported by the record about Mr. Davis' mental health and that it seems to have based its sentence in part on its belief that Mr. Davis... It's such a trivial sentence, honestly. Your Honor, not to Mr. Davis. He deserves punishment. And he is getting punished, and there is no... He's getting very light punishment for engaging in this barbaric activity year after year. He was unsupervised release for a misdemeanor. His violation was the possession of two dogs. I understand the court's position. Okay, well, thank you very much. Thank you. Thank you to both counsels.